IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC., | : : : | Chapter 11<br>Bankr. No. 16-11626 (CTG)<br>(Jointly Administered) |
| Debtors. | : | |
| MESABI METALLICS COMPANY LLC (f/k/a ESSAR STEEL MINNESOTA LLC, | : : : | |
| Plaintiff, | : | Adv. No. 17-51210 (CTG) |
| v. | : : | |
| CLEVELAND-CLIFFS, INC. (f/k/a CLIFFS NATURAL RESOURCES, INC.); CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC; GLACIER PARK IRON ORE PROPERTIES LLC; and DOES 1-10, | : : : : : | Civ. No. 24-1117 (GBW)<br>Misc. No. 24-531 (GBW) |
| Defendants. | : : | |
| GLACIER PARK IRON ORE PROPERTIES LLC, | : : | |
| Counterclaim-Plaintiff, | : : | |
| v. | : | |
| MESABI METALLICS COMPANY LLC (f/k/a ESSAR STEEL MINNESOTA LLC), | : : : | |
| Counterclaim-Defendant. | : : | |
| CLEVELAND-CLIFFS, INC. (f/k/a CLIFFS NATURAL RESOURCES, INC.); CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC, | : : : | |
| Counterclaim-Plaintiffs, | : : | |
| v. | : : | |
| MESABI METALLICS COMPANY LLC (f/k/a ESSAR STEEL MINNESOTA LLC), | : : : | |
| Counterclaim-Defendant. | : : : | |

1

| | |
|---|---|
| CLEVELAND-CLIFFS, INC. (f/k/a CLIFFS NATURAL RESOURCES, INC.); CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC, | : : : : |
| Third-Party Plaintiffs, v. | : : : |
| CHIPPEWA CAPITAL PARTNERS, LLC; and THOMAS M. CLARKE, | : : : |
| Third-Party Defendants. | : : |

## MEMORANDUM OPINION

Before the Court is the motion (Civ. No. 24-1117-GBW, D.I. 1) ("Motion for Withdrawal of the Reference") of Mesabi Metallics Company LLC ("Mesabi"), plaintiff in the above-captioned adversary proceeding[1] (the "Adversary Proceeding") currently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), seeking an order withdrawing the reference pursuant to 28 U.S.C. § 157(d) and Rule 5011(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

After overseeing the Adversary Proceeding though fact discovery, expert discovery, and summary judgment—and determining that there are genuinely disputed questions of material fact that must be tried—the Bankruptcy Court issued its October 8, 2024 order (Adv. D.I. 1083) ("MSJ Order"), which ruled on the parties' summary judgment motions and denied without prejudice Cliffs' *in limine* motions (Adv. D.I. 870, 873, 876) through which Cliffs had challenged each of Mesabi's designated expert witnesses. The Bankruptcy Court declared in its accompanying opinion, "This case must now move to the district court (upon a motion to withdraw the

---

[1] The docket of the Adversary Proceeding, captioned *Mesabi Metallics co. LLC v. Cleveland-Cliffs, Inc., et al.*, Adv. No. 17-51210 (CTG), is cited herein as "Adv. D.I. __."

reference)." (Adv. D.I. 1074 ("MSJ Opinion") at 2.) Mesabi asserts that no question of bankruptcy law remains, and the case is now exclusively an antitrust lawsuit coupled with some business tort claims. In addition, defendants Cleveland-Cliffs Inc. ("Cleveland-Cliffs") and Cleveland-Cliffs Minnesota Land Development LLC ("Cliffs Minnesota," and, together with Cleveland Cliffs, "Cliffs") have demanded a jury trial, and such a trial must be held in the District Court.

Cliffs opposes the Motion for Withdrawal of the Reference, however, on the basis that it is premature because the proceeding is not "trial ready." Cliffs recently filed its own motion (Misc. No. 24-531-GBW, D.I. 1) (the "Motion for Interlocutory Appeal"), which seeks leave to file an interlocutory appeal with respect to the MSJ Order. Despite the Bankruptcy Court's indication that withdrawal of the reference is now appropriate, Cliffs asserts that withdrawal is not mandated by 28 U.S.C. § 157(d), and that there is no cause for permissive withdrawal of the reference of the Adversary Proceeding at this time because Cliffs' Motion for Interlocutory Appeal (and any subsequent proceedings) remain unresolved.

Mesabi's Motion for Withdrawal of the Reference is fully briefed. (Civ. No. 24-1117-GBW, D.I. 1, 3, 8.) Cliff's Motion for Interlocutory Appeal is also fully briefed. (Misc. No. 24-531-GBW, D.I. 1, 2, 3, 4, 9). No party requested oral argument.

For the reasons set forth herein, Cliffs' Motion for Interlocutory Appeal will be denied. As the proceeding is ready for trial, Mesabi's Motion for Withdrawal of the Reference will be granted.

## I.    BACKGROUND

### A.    The Chapter 11 Cases

Mesabi was formed to develop and operate an iron mine and iron ore pellet production facility on the Mesabi Iron Range in northern Minnesota (the "Project"). On July 8, 2016, Mesabi and its affiliate debtor (together the "Debtors") filed voluntary petitions for relief under chapter 11

of the Bankruptcy Code.  The Bankruptcy Court confirmed a plan of reorganization on June 13, 2017, and the Plan became effective on December 22, 2017.

**B.      The Adversary Proceeding and Numerous Pre-Trial Rulings by the Bankruptcy Court Narrowing the Claims and Issues for Trial**

On September 7, 2017, the Debtors filed a complaint in the Bankruptcy Court against Cleveland-Cliffs which commenced this Adversary Proceeding.  Cleveland-Cliffs is engaged in the mining and production of iron ore and pellets in the same region as Mesabi's Project.  Among other things, Mesabi alleges that Cleveland-Cliffs prevented Mesabi from completing the Project so that Cleveland-Cliffs could maintain its monopoly position in the Great Lakes region.

On December 11, 2017, Cleveland-Cliffs and its subsidiary, Cliffs Minnesota, entered into a transaction with Glacier Park Iron Order Properties LLC ("GPIOP") to acquire certain real estate interests and mineral and surface leases that were formerly leased by GPIOP to Mesabi (the "Mineral Leases").  On December 22, 2017, Mesabi filed a motion for leave to file an amended complaint in the Adversary Proceeding, which, among other things, added Cliffs Minnesota and GPIOP as defendants and added certain counts related to the Mineral Leases.  The Bankruptcy Court granted the motion, and, on January 23, 2018, Mesabi filed the operative second amended complaint (Adv. D.I. 18) (the "Complaint"), which included 25 claims for relief.

To narrow the issues Mesabi, Cliffs, and GPIOP agreed to submit motions for partial summary judgment on the Mineral Lease-related counts of the Complaint.  On February 26, 2018, GPIOP filed a motion for summary judgment (Adv. D.I. 31) (the "GPIOP MSJ").  On March 28, 2018, Cliffs filed its motion for summary judgment on substantially the same counts and grounds as the GPIOP MSJ (Adv. D.I. 46) (the "Cliffs MSJ").  Also on March 28, 2018, Mesabi filed an opposition to the GPIOP MSJ and a cross-motion for summary judgment on substantially the same counts included in the GPIOP MSJ (Adv. D.I. 49) (the "Mesabi MSJ," and collectively with the GPIOP MSJ, and the Cliffs MSJ, the "Cross MSJs").  Once briefing was complete, the Bankruptcy

Court heard arguments on the Cross MSJs on May 15, 2018. The Bankruptcy Court issued an opinion granting the GPIOP MSJ and Cliffs MSJ (Adv. D.I. 98) on July 23, 2018, and entered an accompanying order (Adv. D.I. 104) on August 15, 2018.[2]

On August 31, 2018, GPIOP filed a second summary judgment motion (Adv. D.I. 115), which the Bankruptcy Court granted in part and denied in part by an order dated March 5, 2019. (Adv. D.I. 183.)

On February 26, 2018, GPIOP filed an answer and counterclaims against Mesabi (Adv. D.I. 30); and Cleveland-Cliffs and Cliffs Minnesota filed answers and counterclaims against Mesabi as well as third-party claims against Chippewa Capital Partners LLC ("Chippewa") and Thomas M. Clarke. (Adv. D.I. 34, 35.) Cleveland-Cliffs and Cliffs Minnesota did not consent to the Bankruptcy Court entering a final order in the Adversary Proceeding and disputed that the claims are "core." (Adv. D.I. 34 at 7, 101; Adv. D.I. 35 at 2, 57.) Both Cleveland-Cliffs and Cliffs Minnesota demanded a jury trial on all claims. (Adv. D.I. 34 at 101; Adv. D.I. 35 at 57.)

On April 11, 2018, Mesabi moved to dismiss GPIOP's counterclaims (Adv. D.I. 60); and Mesabi, Chippewa, and Mr. Clarke moved to dismiss Cliffs' counterclaim and third-party claims (Adv. D.I. 62.) Once briefing was complete, the Bankruptcy Court entered orders granting in part and denying in part (a) Mesabi's motion to dismiss GPIOP's counterclaims (Adv. D.I. 148, 151), and (b) Mesabi's motion to dismiss Cliffs' counterclaims and third-party claims (Adv. D.I. 146).

On January 10, 2019, Mesabi filed an answer and counterclaims to GPIOP's counterclaims. (Adv. D.I. 163.) Also on January 10, 2019, Mesabi, Mr. Clarke, and Chippewa each filed an answer to Cliffs' counterclaims. (Adv. D.I. 160, 161, 162.) On February 2, 2021, in accordance with a settlement entered into by Mesabi and GPIOP, the Bankruptcy Court entered an order

---

[2] On August 27, 2018, Mesabi appealed that order (Adv. D.I. 106) and concurrently moved for leave to prosecute the appeal on an interlocutory basis (Adv. D.I. 108). The District Court denied Mesabi's request on September 11, 2019. (Adv. D.I. 233).

dismissing all claims and counterclaims asserted by Mesabi against GPIOP, and by GPIOP against Mesabi. (Adv. D.I. 450.) The Adversary Proceeding continued as to (i) Mesabi's claims against Cliffs for violations of federal and state antitrust law and commission of certain common law torts, and (ii) Cliffs' claims against Mesabi, Chippewa, and Mr. Clarke for tortious interference and related tort claims. Fact discovery closed on April 7, 2023. Expert discovery closed on October 13, 2023.

### B.    The MSJ Opinion and Order

On November 10, 2023, Cliffs filed a motion for summary judgment on Mesabi's antitrust and tort claims. (Adv. D.I. 836.) On the same day, Mesabi filed (1) a motion for partial summary judgment on the relevant market and Cliffs' monopoly power (Adv. D.I. 835); and (2) a motion for summary judgment on Cliffs' counterclaims for tortious interference with a prospective business advantage (Adv. D.I. 833.) The parties filed their respective oppositions to the summary judgment motions on December 22, 2023 (Adv. D.I. 894, 890, 888) and their respective replies on January 19, 2014 (Adv. D.I. 952, 956, 955). The Bankruptcy Court heard arguments on the motions on February 12, 2024 and March 25, 2024. Cliffs settled its counterclaims against Mr. Clarke. (Adv. D.I. 1003, 1004.)

The Bankruptcy Court issued the SJ Opinion under seal on August 27, 2024 (publicly docketed on September 4, 2024): (1) denying in part and granting in part Cliffs' motion for summary judgment; (2) granting Mesabi's motion for partial summary judgment on the market definition and monopoly power; and (3) granting Mesabi's motion for summary judgment on Cliffs' counterclaims. Cliffs' motion for summary judgment on the antitrust claims was denied in full. (*See* MSJ Opinion at 47-78.) As a result, the Adversary Proceeding is now narrowed down to Mesabi's claims against Cliffs for violations of federal and state antitrust law and commission

of certain common law torts.[3]  Judge Goldblatt explained that the claims are trial ready and that the remaining claims in the Adversary Proceeding should proceed in the District Court upon a motion for withdrawal of the reference.  (*See* MSJ Opinion at 2, 15-17.)  On October 8, 2024, the Bankruptcy Court entered the MSJ Order.  On October 22, 2024, Cliffs filed its Notice of Appeal.  (Adv. D.I. 1089.)

## II.   JURISDICTION

The MSJ Order is interlocutory.  This Court has jurisdiction to hear appeals, with leave of the court, from "interlocutory orders and decrees" of the Bankruptcy Court.  28 U.S.C. § 158(a)(3).  Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal.  *See id.*  "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals."  *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).[4]

Under the standards of § 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation.  *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974).

---

[3] The remaining claims against Cliffs are: Tortious Interference with Business Relations or Prospective Economic Advantage; Violation of Section I of Sherman Act (Agreements in Restraint in Trade); Violation of Section 2 of Sherman Act (Monopolization); Violation of Section 2 of Sherman Act (Attempted Monopolization); Violation of Minn. Stat. § 325D.52 (Monopolization); Violation of Minn. Stat. § 325D.52 (Attempted Monopolization).  There are no remaining counterclaims by Cliffs against Mesabi or Chippewa.

[4] *See also In re Philadelphia Newspapers, LLC,* 418 B.R. 548, 556 (E.D. Pa. 2009) ("Based upon the decision of the Third Circuit in *Bertoli v. D'Avella (In re Bertoli)*, 812 F.2d 136, 139 (3d Cir. 1987), courts within this Circuit confronted with the decision whether to grant leave to allow an interlocutory appeal are informed by the criteria in 28 U.S.C. § 1292(b).").

Interlocutory appeals are "the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995); *In re Processed Egg Prod. Antitrust Litig.*, 2017 WL 4416203, at *1 (E.D. Pa. Sept. 29, 2017). Entertaining review of an interlocutory order under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

## III.    ANALYSIS

### A.    Leave to Appeal the Interlocutory MSJ Order Is Not Warranted

Cliffs contends that the MSJ Order presents the following questions of law on appeal: (1) whether an antitrust plaintiff may combine conduct, lawful by itself under the relevant antitrust tests, to transform that legal conduct into unlawful anticompetitive activity; (2) whether an antitrust plaintiff has the burden to offer a reasonable basis for calculating the amount of damages or whether it may proceed to trial with evidence of the fact of some unspecified amount of damages; and (3) whether an antitrust plaintiff with only indirect evidence of high market share and high barriers to entry may establish monopoly power as a matter of law, even when there is contrary direct evidence of the lack of monopoly power. (Misc. No. 24-531-GBW, D.I. 1 at 2.)

### 1.  Question 1 Does Not Warrant Interlocutory Appeal

According to Cliffs, the first question presented by its appeal is whether an antitrust plaintiff may combine conduct, lawful by itself under the relevant antitrust tests, to transform that legal conduct into unlawful anticompetitive activity. (Misc. No. 24-531-GBW, D.I. 1 at 6-9.)

***Controlling question of law.*** As an initial matter, the question presented on appeal by Cliffs distorts the Bankruptcy Court's ruling. With respect to Cliffs' alleged conduct—entering into long-term exclusive contracts with the largest customers in the market, pressuring critical vendors to stop working for Mesabi, and acquiring property in the middle of Mesabi's Project for the purpose of killing Mesabi's Project—the Bankruptcy Court did not rule that each act was "lawful by itself." Further, the Bankruptcy Court did not state that lawful conduct could be made unlawful when combined, but rather that individual acts may collectively have anticompetitive effects that rise to the level of a violation of the Sherman Act, 15 U.S.C. § 1 *et seq.*, even if none would do so by itself: "Where a defendant with monopoly power engages in a series of actions that stifle competition, it is no defense to an antitrust challenge to say that no *single* act, viewed in isolation, would not have had that effect." (MSJ Opinion at 51.)

Cliffs concedes that determining whether its conduct was "lawful by itself under the relevant antitrust tests" requires application of law to fact. (Misc. No. 24-531-GBW, D.I. 1 at 8 ("[T]here are conflicting opinions on how to *apply* the correct legal standard ...") (emphasis added). "This fact alone is grounds to deny the motion under § 1292(b)," *Processed Egg Prods.*, 2017 WL 4416203 at *2, because interlocutory review is only appropriate where there is a "pure" question of law, as opposed to a question that requires the application of law to facts. *See, e.g., Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 863 (3d Cir. 1977) ("28 U.S.C. § 1292(b) is not designed for review of factual matters but addresses itself to a 'controlling question of law.'"); *Liberty Salad, Inc. v. Groundhog Enters., Inc.*, 2019 WL 1303829, at *3 (E.D. Pa. Mar. 20, 2019) ("The term 'question of law' ***does not mean the application of law to fact***. Instead, it is an abstract

9

legal issue or 'pure' question of law—matters that the court of appeals 'can decide quickly and cleanly without having to study the record.'") (emphasis added) (citations omitted); *In re Quorum Health Corp.*, 2024 WL 2271892, at *4 (D. Del. May 20, 2024) ("Courts have cautioned that a controlling question of law must be one that the reviewing court could decide quickly and cleanly without having to study the record." (cleaned up)).

      ***Substantial grounds for a difference of opinion***. Additionally, Cliffs has not shown that there are substantial grounds for a difference of opinion as to whether a court must holistically consider the effects of anticompetitive conduct. This "calls for more than mere disagreement with the ruling of the bankruptcy court." *Quorum Health*, 2024 WL 2271892 at *4. Rather, a party seeking interlocutory review must show "genuine doubt as to the correct legal standard," an "absence of controlling law" or that "the bankruptcy court's decision is contrary to well-established law." *Id.* (internal quotations and citations omitted).

      Mesabi's complaint alleges three categories of conduct by Cliffs that it contends are anticompetitive: (1) the ten-year pellet sale and purchase agreement that Cliffs entered into with ArcelorMittal in October 2016; (2) Cliffs' refusal to work with certain contractors if they continued to work with Mesabi; and (3) Cliffs' December 2017 land transaction with Glacier Park. (MSJ Opinion at 50.) Cliffs moved for summary judgment on each separate agreement and action, asking the Bankruptcy Court to consider each in isolation. The Bankruptcy Court rejected that as an "improper standard ... to consider anticompetitive conduct." (*Id.*) "As the Supreme Court clarified in *Continental Ore Co. v. Union Carbide & Carbon Corp.*, courts must look to an alleged monopolist's conduct taken as a whole, rather than considering each aspect in isolation." (*Id.*) "There, the Court stated that 'in a case like the one before us [alleging § 1 and § 2 violations], the duty of the jury was to look at the whole picture and not merely at the individual figures in it.'" (*Id.*, quoting *Continental Ore*, 370 U.S. at 699).

Cliffs argues that a "holistic" analysis may not be used to circumvent the application of a particular test that would otherwise apply and not be satisfied. As Cliffs put it, "five wrong claims do not make a right one." As the Bankruptcy Court explained:

> A plaintiff's failure to satisfy an applicable legal standard cannot be circumvented by lumping it with a series of otherwise separate actions that also fail to meet the relevant standard in the hope that a jury might conclude that, viewed "holistically," the defendant's conduct was anticompetitive. But that does not mean that where a plaintiff is challenging a *series* of actions as anticompetitive, a defendant is entitled to disaggregate its actions, insisting that each one be viewed separately, rather than *in its context*. Where a defendant with monopoly power engages in a series of actions that stifle competition, it is no defense to an antitrust challenge to say that no *single* act, viewed in isolation, would not have had that effect.

(MSJ Opinion at 51.)

Cliffs has failed to establish substantial grounds for a difference of opinion. The Bankruptcy Court followed the Supreme Court's decision in *Continental Ore*, which established that when the claimed anticompetitive conduct is a series of acts, its "character and effect … are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Continental Ore*, 370 U.S. at 699; *see also LePage's, Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003) (en banc) ("The relevant inquiry is the anticompetitive effect of 3M's exclusionary practices *considered together*.") (emphasis added); *Duke Energy Carolinas, LLC v. NTE Carolinas II LLC*, 111 F.4th 337, 355 (4th Cir. 2024) (same); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1152-53 (9th Cir. 2019) (same); *Sage Chem., Inc. v. Supernus Pharms., Inc.*, 2024 WL 2260331, at *7 (D. Del. May 9, 2024); *Abbott Labs v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 428 (D. Del. 2006). As Mesabi points out, the Bankruptcy Court applied the same legal standard for which Cliffs advocates: it argues that *Continental Ore* is "correctly read … merely to stand for the proposition that courts must look at *anticompetitive* acts in combination to *assess their anticompetitive effect*". (Misc. No. 24-531-GBW, D.I. 1 at 8

11

(emphasis added).)  This is consistent with the Bankruptcy Court's ruling.  (*See* MSJ Opinion at 62-63 ("[R]egardless of whether the applicable standard requires that the challenged conduct foreclosed Mesabi's access to the market, or (as for conduct for which no specific test is applicable) requires that the conduct in question had an anticompetitive effect … one must view the challenged conduct holistically, rather than viewing any particular act as if it occurred in isolation").)  The Bankruptcy Court applied Cliffs' proposed standard, *i.e.*, evaluating anticompetitive effects holistically.

Cliffs argues that "substantial ground for a difference of opinion" exists because *Continental Ore* is somehow inconsistent with the Supreme Court's decision in *Pacific Bell Telephone Co. v. linkLine Communications, Inc.*, 555 U.S. 438 (2009), and a single unreported district court case, *3Shape Trios A/S v. Align Tech., Inc.*, 2019 U.S. Dist. LEXIS 137982, at *30-31 (D. Del. Aug. 15, 2019).  (Misc. No. 24-531-GBW, D.I. 1 at 7.)  But *linkLine* did not even mention *Continental Ore*, let alone overrule it.  The Court sees no conflict between the rule announced in *linkLine* and *Continental Ore*.  *linkLine*, 555 U.S. 438.  As one district court put it, "[t]he *Linkline* Court did not discuss the sufficiency of other monopolization scheme claims, nor does anything in the *Linkline* decision indicate an intention on the part of the Court to overrule long-established principles concerning the viability of claims alleging an overall scheme to unlawfully maintain a patent monopoly by excluding generic competition."  *In re Neurontin Antitrust Litig.*, 2009 WL 2751029, at *16 (D.N.J. Aug. 28, 2009).

In *linkLine*, the plaintiff invented a new theory of antitrust liability based on two existing theories, but each of those theories had a prerequisite test that the plaintiff could not satisfy individually. The Court merely held that a plaintiff may not create "a new theory of antitrust liability by joining multiple claims, all of which are ***specifically foreclosed*** by existing antitrust

precedent." *In re Suboxone Antitrust Litig.*, 2017 WL36371, at \*9 (E.D. Pa. Jan. 4, 2017) (emphasis added). *linkLine* and *3Shape* have no application here because Mesabi's claims do not depend on any individual act that is "specifically foreclosed by existing antitrust precedent." *Id.*; *cf. linkLine*, 555 U.S. at 452 (challenged scheme required duty to deal and predatory pricing); *3Shape*, 2019 WL 3824209 at \*5 (challenged scheme required duty to deal, predatory pricing, and sham petitioning). Indeed, the best argument Cliffs can muster is that its conduct "could be legal." (Misc. No. 24-531-GBW, D.I. 1 at 6.) But the opposite is also true: the conduct could be illegal, and with ample support in the record that Cliffs' conduct had anticompetitive effects, that is enough for the claim to proceed to trial.[5]

Cliffs filed a Notice of Subsequent Authority (Misc. No. 24-531-GBW, D.I. 1 at 8), arguing that a dissent from an order denying rehearing *en banc* in a different jurisdiction establishes a substantial ground for a difference of opinion concerning the interpretation of *linkLine*. Needless to say, an order denying rehearing *en banc*—let alone a dissent from such an order—has no precedential value because it is not a judgment on the merits. *See Levy v. Sterling Holding Co.*, 544 F.3d 493, 499 n.5 (3d Cir. 2008) (order denying rehearing *en banc* does not "imply any judgment on the merits and has no jurisprudential significance"). Moreover, the Court agrees with Mesabi that, even if the dissent in *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC* communicates something about the position of the Fourth Circuit, it does not reflect a substantial

---

[5] The Bankruptcy Court held that "whether [Cliffs'] long-term contract [with one customer] so interfered with Mesabi's access to the market is a genuinely disputed question of material fact, which precludes the entry of summary judgment on the question whether Cliffs exercised monopoly power." (MSJ Op. 53-54; *see id.* at 55-59 (finding record supports claim that Cliffs interfered with "important" Mesabi vendors, "harm[ing] Mesabi's efforts to obtain financing" and complete its project); *id.* at 59-62 (describing potential anti-competitive effects of Cliffs' acquisition of property as "diminishing the value of the project by 70 percent," "increas[ing] [Mesabi's] operating costs," and "caus[ing] difficulties for Mesabi in presenting itself as a viable entity to potential" investors); *id.* at 63 (describing "sufficient evidence" that Cliffs acquired property "to prevent Mesabi from completing its project").)

ground for difference of opinion concerning the "interpretation of *linkLine*" in Mesabi's action in the Third Circuit.

The *linkLine* decision held that a plaintiff cannot create "a new form of antitrust liability never before recognized by this Court" by combining an *unactionable* claim based on an alleged refusal to deal (because no such duty applied) with an *unactionable* claim based on alleged predatory pricing (because the defendant's prices were above cost and could not be predatory). *linkLine*, 555 U.S. at 457. The fundamental disagreement between the majority and dissent in *Duke Energy* concerns not the *interpretation* of *linkLine*, but its *application* to the specific facts of that case. The dissent argued that the alleged anticompetitive conduct in *linkLine* (a refusal to deal and predatory pricing) is the same as the conduct in *Duke Energy*, and that those specific categories of conduct are subject to specific doctrinal tests:

> Relevant to NTE's claims, if a company is refusing to deal on the free market with its competitors, certain conditions must be met before the conduct may be considered unlawful. *See Trinko*, 540 U.S. at 408–10. Likewise, if a company is setting curiously low prices, certain conditions must be met before the conduct may be considered unlawful. *See Brooke Grp.*, 509 U.S. at 243.

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, No. 22-2168, slip op. at 20 (4th Cir. Nov. 26, 2024) (Quattlebaum, J., dissenting). The dissent criticized the majority for not applying the doctrinal tests for such conduct, asserting that those tests must be met under *linkLine*. *See id.* at 21 ("the panel casts the tests for refusal to deal and predatory pricing aside"). The majority disagreed, concluding that the conduct alleged in *Duke Energy* was sufficiently broad and atypical that it should not be "cabin[ed] . . . into two distinct narrower categories of refusal to deal and predatory pricing." *Id.* at 9 (Niemeyer, J.).

That dispute—about whether the alleged conduct in *Duke Energy* is the same as the conduct in *linkLine*—is irrelevant to Mesabi's claims. Mesabi alleges neither a refusal to deal nor predatory pricing, nor does it seek to create a new form of antitrust liability. Rather, Mesabi's

14

claims all revolve around the well-established antitrust theories of foreclosure and raising a rival's costs. Mesabi alleges that Cliffs used its monopoly power to deny Mesabi access to critical elements needed to compete—access to customers, contractors, and land.

In trying to apply *linkLine* to Judge Goldblatt's ruling, Cliffs conflates doctrinal *conduct* tests (such as the conduct test for predatory pricing that asks if the defendant's prices were below its costs, *Brooke Group*) with the assessment of the anticompetitive *effects* caused by a series of acts, which is properly considered holistically under *Continental Ore*. Accordingly, any disagreement among the Fourth Circuit judges about the application of the doctrinal conduct tests of predatory pricing and refusals to deal in *Duke Energy* has no bearing on Cliffs' requested appeal here, which challenges only the Bankruptcy Court's collective consideration of the *effects* of Cliffs' conduct.

***Materially advancing the ultimate termination of the litigation.*** Cliffs has further failed to show that resolution of the first question may materially advance the termination of the litigation. "An interlocutory appeal 'materially advances' the litigation if it '(1) eliminates the need for trial, (2) eliminates complex issues so as to simplify the trial, or (3) eliminates issues to make discovery easier and less costly.'" *Quorum Health*, 2024 WL 2271892, at *6 (quoting *In re Paragon Offshore PLC*, 2020 WL 1815550, at *3 (D. Del. Apr. 9, 2020)). "Courts do not allow interlocutory appeals where a successful appeal 'would only promote piecemeal determination of the questions raised in the adversary action and would likely create unnecessary delay.'" *In re Maxus Energy Corp.*, 611 B.R. 532, 546 (D. Del. 2019) (quoting *In re AE Liquidation, Inc.*, 451 B.R. 343, 347 (D. Del. 2011)).

Here, discovery is over and there is nothing left to do but try the case. Nevertheless, Cliffs asks this Court to review the Bankruptcy Court's decision, including its analysis of the summary judgment record, and if the Court agrees with Cliffs, return the case to the Bankruptcy Court so

that Judge Goldblatt can revisit his summary judgment decision to consider (again) each of Cliffs' exclusionary acts individually, followed by another holistic evaluation of the anticompetitive effects of Cliffs' conduct. (Misc. No. 24-531-GBW, D.I. 1 at 8 (arguing *Continental Ore* requires courts to "look at anticompetitive acts in combination *to assess their anticompetitive effect*") (emphasis added).) An appeal would only delay the litigation's termination. Furthermore, Cliffs offers no basis to believe that the Bankruptcy Court would change its determination that evidence of Cliffs' acts must be heard by a jury (not least because the Bankruptcy Court applied the same standard Cliffs demands). (*See* MSJ Opinion at 51.) For at least these reasons, Cliffs' first question is inappropriate for interlocutory review.

### 2. Question 2 Does Not Warrant Interlocutory Appeal

According to Cliffs, the second question presented by its appeal is whether an antitrust plaintiff has the burden to offer a reasonable basis for calculating the amount of damages or whether it may proceed to trial with evidence of the fact of some unspecified amount of damages. (Misc. No. 24-531-GBW, D.I. 1 at 9-11.)

***Substantial grounds for a difference of opinion.*** According to Cliffs, the Bankruptcy Court held that "it *did not matter* whether Mesabi had any evidence sufficient to reasonably estimate the amount of damages." (Misc. No. 24-531-GBW, D.I. 1 at 9 (emphasis in original).) The Bankruptcy Court held, however, that the evidence in the summary judgment record "is more than sufficient to permit a conclusion that Mesabi sustained *some* damages." (MSJ Opinion at 78 (emphasis in original).) Here, the Bankruptcy Court followed the Third Circuit's standard for assessing antitrust damages at summary judgment. *See Callahan v. A.E.V.*, 182 F.3d 237, 254 (3d Cir. 1999) (on summary judgment, court should "focus on whether there is sufficient evidence of fact of damage in general, not on the sufficiency of the evidence of a specific amount of damages"); *Rossi v. Standard Roofing*, 156 F.3d 452, 484 (3d Cir. 1998) (holding that at summary judgment

stage court should not concern itself with determining specific amount of damages); *Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC*, 2019 U.S. Dist. LEXIS 56110, at \*18 (D.N.J. Apr. 1, 2019) ("at the summary judgment stage, Marjam has met its burden of 'proof of some damage flowing from' the Act's violation" (citing *Rossi*, 156 F.3d at 483)).

Cliffs argues that Mesabi's only evidence of damages is the opinion of Mesabi's expert. (Misc. No. 24-531-GBW, D.I. 1 at 11 (claiming that striking Mesabi's expert will leave "Mesabi with no evidence for a jury to reasonably estimate an amount of damages"); Adv. D.I. 847 at 6 ("without [its expert's opinion], Mesabi has nothing that could create a genuine issue of fact here"); *see also id.* at 15, 47.) Judge Goldblatt rejected Cliffs' argument, determining that the summary judgment record contains evidence of Mesabi's damages independent of expert opinion. (MSJ Opinion at 25.) The Bankruptcy Court pointed to evidence of quantifiable costs that Mesabi incurred due to Cliffs' anticompetitive conduct, such as the need to pay a consultant to prepare a new mine plan. (*See id.* at 71-78.) As such, the Bankruptcy Court did not need to decide the expert admissibility issue to resolve Cliffs' summary judgment motion. (*See id.* at 24-25.)

Cliffs relies on cases concerning the burden of quantifying damages at *trial*, but those decisions have no bearing on the standard applied at summary judgment. (*See* Misc. No. 24-531-GBW, D.I. 1 at 10 (citing *LePage's, Inc. v. 3M*, 324 F.3d at 144 (appeal from jury verdict against defendants); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008) ("At issue in this antitrust action are the standards a district court applies when deciding whether to *certify a class*.") (emphasis added); *Spartan Concrete Products, LLC v. Argos USVI, Corp.*, 929 F.3d 107, 111-12 (3d Cir. 2019) (appeal from directed verdict after bench trial); *Deaktor v. Fox Grocery Co.*, 475 F.2d 1112, 1114 (3d Cir. 1973) (appeal from directed verdict after jury trial). Cliffs makes a similar mistake when quoting *Rossi*. There, the court was explaining what a plaintiff "ultimately" must prove at trial to quantify damages, not the lower burden of proof that applies at summary

judgment. (*See* Misc. No. 24-531-GBW, D.I. 1 at 9.) Confirming the point, the sentence preceding

Cliffs' quotation describes the role of "the jury" in calculating damages. *Rossi*, 156 F.3d at 484.

The Bankruptcy Court correctly applied this same principle, recognizing that the jury, not the court

at summary judgment, quantifies damages. (MSJ Opinion at 77-78 ("A jury is ultimately required

to quantify damages …"). These cases create no genuine doubt as to the correct standard.

 For at least this reason, Cliffs' second question is inappropriate for interlocutory review.

### 3. Question 3 Does Not Warrant Interlocutory Appeal

 According to Cliffs, the third question presented by its appeal is whether an antitrust

plaintiff with only indirect evidence of high market share and high barriers to entry may establish

monopoly power as a matter of law, even when there is contrary direct evidence of the lack of

monopoly power. (Misc. No. 24-531-GBW, D.I. 1 at 11-14.)

 ***Substantial grounds for a difference of opinion.*** To recover on its monopolization and

attempted monopolization claims, Mesabi must prove "monopoly power"—"the ability to control

prices and exclude competition in a given market." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d

297, 307, 317 (3d Cir. 2007). Courts note two ways to establish this crucial element, the first being

"direct evidence of supracompetitive prices and restricted output" and the second being indirect

evidence of "the structure and composition of the relevant market." *Id.* "To support an inference

of monopoly power, a plaintiff typically must plead and prove that a firm has a dominant share in

a relevant market, and that significant 'entry barriers' protect that market." *Id.* (cleaned up).

"Barriers to entry are factors, such as regulatory requirements, high capital costs, or technological

obstacles, that prevent new competition from entering a market in response to a monopolist's

supracompetitive prices." *Id.*

 Mesabi argues that it presented unrebutted analyses from a Ph.D. economist demonstrating

Cliffs' monopoly power based on its high market share, high barriers to entry, and other structural

evidence.[6] For whatever reason, Cliffs made the decision to leave Mesabi's economic evidence unrebutted. Mesabi argues that its unrebutted evidence resolves this issue because an antitrust plaintiff can choose whether to prove market power using either direct *or* structural evidence; it need not show both. *See Broadcom*, 501 F.3d at 307 ("The existence of monopoly power ... may also be inferred from the structure and composition of the relevant market."); *U.S. v. Microsoft Corp.*, 253 F.3d 34, 57 (D.C. Cir. 2001) ("Microsoft cites no case, nor are we aware of one, requiring direct evidence to show monopoly power.").

As Cliffs points out (Misc. No. 24-531-GBW, D.I. 1 at 12), other courts have held that "[m]arket power cannot be inferred solely from the existence of entry barriers and a dominant market share." *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F. 3d 1421, 1442 (9th Cir. 1995) (finding that an issue of fact, as to whether competitor's 44% market share in city gasoline retail market supported a finding of market power for purposes of attempted monopolization claim, precluded summary judgment for competitor); *see also Ball Mem. Hosp., Inc. v. Mutual Hosp. Ins., Inc.*, 784 F.2d 1325, 1335-36 (7th Cir. 1986); and *United States v. Syufy Enterprises*, 903 F.2d 659, 664 (9th Cir. 1990).) But in each of those cases, unlike this case, the court found that the structural evidence did not conclusively establish the relevant market and the defendant's market power therein. For example, unlike Mesabi's industry, which requires high costs to expand production (like restarting an idled mine and pellet plant case), *Rebel Oil* involved the retail gasoline industry, where companies "can simply purchase and transport more gasoline" to increase competition. Cliffs misreads *Sterling Merchandising, Inc. v. Nestle*, 656 F.3d 112 (1st Cir. 2011), which concerned a post-closing challenge to a consummated vertical merger. There, the defendant, unlike Cliffs here, showed "evidence of successful new entries" as well as that the

---

[6] Mesabi cites Adv. D.I. 956 at 9, which was filed under seal and not provided to this Court. An unredacted version is available at Adv. D.I. 960.

defendant's "own market share is decreasing" in the relevant market, which called into question

plaintiff's structural evidence. *Id.* at 125-26.  In *L.A. Land Co.*, the court held that the plaintiff did

not show the defendant's market share was accompanied by high barriers to entry or the ability to

exclude new entrants.  *L.A. Land Co.*, 6 F.3d 1422, 1425-26 (9th Cir. 1993).  Neither case

presented, as here, an undisputed relevant product and geographic market, an undisputed market

share exceeding 70%, and undisputed high barriers to entry.

Nonetheless, Cliffs argues that it presented factual and expert evidence[7] showing it did not

possess monopoly power and that its direct evidence of an absence of monopoly power was

sufficient to create a disputed issue of fact precluding summary judgment on this issue.  (Misc.

No. 24-531-GBW, D.I. 3 at 7.)  "In cases in which both types of evidence are presented at summary

judgment," Cliffs argues, "courts consider both—unlike the bankruptcy court here."  (Misc. No.

24-531-GBW, D.I. 1 at 12.)  Cliffs cites no authority for its contention that its direct evidence[8] of

an absence of monopoly power trumps Mesabi's unchallenged structural evidence of monopoly

power.  Cliffs contends that "[e]ven courts that have expressed doubt about whether direct

evidence can disprove monopoly power have nevertheless considered it alongside indirect

evidence," whereas, here, the Bankruptcy Court "never conducted this inquiry."  (Misc. No. 24-

531-GBW, D.I. 3 at 6-7 (citing *Graco Inc. v. Carlisle Constr. Materials*, 2024 WL 4384168, at

---

[7] Cliffs cites Adv. D.I. 890, which was filed under seal and not provided to the Court.  While a
redacted version is available at Adv. D.I. 971, the pages cited (pp. 19–23) are heavily redacted and
of little help to the Court.

[8] According to Mesabi, Cliffs' direct evidence is its claim that Cliffs' prices in a single contract
were competitive.  Mesabi argues that, even if Cliffs' characterization of its evidence is correct,
that evidence is irrelevant.  It does not matter that a monopolist sometimes chooses not to exercise
its monopoly power; what matters is that it possesses such power.  *See American Tobacco Co. v.
United States*, 328 U.S. 781, 811 (1946) ("[T]he material consideration in determining whether a
monopoly exists is not that prices are raised and that competition actually is excluded but that
power exists to raise prices or to exclude competition when it is desired to do so.").  Indeed, there
are myriad reasons a monopolist might choose not to exercise its monopoly power (*e.g.*, customer
relations).

*2-3 & n.1 (D. Del. Oct. 3, 2024).) *Graco* does not advance Cliffs' position.[9] According to Cliffs,

however, the *Graco* court at least considered the defendant's direct evidence, whereas in this case,

the Bankruptcy Court deemed Cliffs' "substantial direct evidence of real world competition in the

market" to be "irrelevant as a matter of law" and "explicitly ignor[ed]" it. (*Id.* at 7.)

The Court disagrees that the Bankruptcy Court ignored Cliffs' direct evidence, or deemed

it irrelevant, and that the Bankruptcy Court, therefore, applied the wrong legal standard. Rather,

the MSJ Opinion reflects that the Bankruptcy Court considered Cliffs' evidence but found it

insufficient to create a genuine dispute of material fact as to whether Cliffs possessed monopoly

power. (MSJ Opinion at 43-47.) Cliffs' disagreement with the Bankruptcy Court is therefore not

based on any genuine doubt as to the correct legal standard. For at least this reason, Cliffs' third

question is inappropriate for interlocutory review.

In sum, Cliffs has failed to show that interlocutory appeal of the MSJ Order is warranted.

**B.    Withdrawal of the Reference Is Required**

District courts "have original but not exclusive jurisdiction of all civil proceedings arising

under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  Pursuant to

the authority granted by 28 U.S.C. § 157(a), this Court has referred all cases arising under title 11

to the Bankruptcy Court. *See* Am. Standing Order of Reference, Feb. 29, 2012 (C.J. Sleet).

---

[9] *See Graco*, 2024 WL 4384168 at *2 ("[Defendant] argues that the presence of direct evidence demonstrating the existence of competition means we may not look to indirect evidence to determine whether [Defendant] has monopoly power.  The Third Circuit tells us differently in *Broadcom* ... Under *Broadcom*, it is appropriate for us to evaluate [Defendant's] market share, along with characteristics of the market, to determine whether [Defendant] possesses monopoly power—even when [Defendant] points to purportedly direct evidence of competition") (citations omitted); *see also id.* at *2, n.1 ("Not only does *Broadcom* give us two ways to establish monopoly power—direct or indirect evidence—but it also discusses only *proving* monopoly power, as opposed to disproving it. While it is certainly antitrust plaintiff's burden to prove monopoly power, *Broadcom* does not tell us that an antitrust defendant may escape liability by pointing to evidence of competition when they (1) have high market share and (2) exist in a market with unfavorable competitive conditions") (citations omitted).

Nevertheless, Congress specified that, in certain circumstances, district courts are authorized to withdraw the reference to the bankruptcy courts and adjudicate disputes directly. *See* 28 U.S.C. § 157(d). In particular, section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). Section 157(d) provides two avenues for withdrawing the reference—permissive withdrawal and mandatory withdrawal—depending on the specific facts of the dispute.

## 1.    Withdrawal of the Reference Is Mandatory

"In the District of Delaware, withdrawal is deemed mandatory when (1) consideration of law outside of [the Bankruptcy Code] is necessary for the resolution of the case or proceeding; and (2) the consideration of federal law outside the Bankruptcy Code necessary to resolve the proceeding is substantial and material." *In re Continental Airlines*, 138 B.R. 442, 444-45 (D. Del. 1992) (citing cases); *see also United States v. Delfasco, Inc.*, 409 B.R. 704, 707 (D. Del. 2009) (holding mandatory withdrawal is required "where the action requires a 'substantial and material' consideration of federal law outside the Bankruptcy Code") (citation omitted); *In re CM Holdings, Inc.,* 221 B.R. 715, 721 (D. Del. 1998) ("this Court has clarified the meaning of 'substantial and material' by 'distinguish[ing] between meaningful consideration' of federal law outside of the Bankruptcy Code and its 'simple application'; when only a 'simple application of well-settled law is required, withdrawal is not mandatory.'") (quoting *In re Columbia Gas Sys., Inc.*, 134 B.R. 808, 811 (D. Del. 1991)).

The trial in this Adversary Proceeding will require evaluation of substantive antitrust law and issues such as whether Cliffs engaged in an exclusionary scheme to maintain its monopoly

22

power, including, as alleged: (1) using long-term contracts to foreclose competition, (2) demanding key vendors stop working with Mesabi; and (3) acquiring property in the middle of Mesabi's Project site to impede completion of the Project. (MSJ Opinion at 47-71 (identifying genuine questions of material fact for trial on these issues).)

Cliffs does not dispute that resolution of the Adversary Proceeding "requires substantial and material consideration of non-Bankruptcy Code laws regulating interstate commerce." (*See* Civ. No. 24-1117-GBW, D.I. 3.) Cliffs also does not contest that, in such circumstances, courts consistently hold that the District Court must withdraw the reference to the Bankruptcy Court. (*See id.*) Rather, Cliffs argues that 28 U.S.C. § 157(d) "dictates that mandatory withdrawal applies *only* when 'the court determines that resolution of the proceeding requires consideration of *both* title 11 [the Bankruptcy Code] *and* other laws of the United States regulating organizations or activities affecting interstate commerce.'" (*Id.*) "Mandatory withdrawal cannot apply here," Cliffs contends, "because there are no Bankruptcy Code claims in this proceeding." (*Id.*)

Although Mesabi filed claims against Cliffs under both bankruptcy and non-bankruptcy laws, the Bankruptcy Court has since dismissed all the bankruptcy-based claims, leaving only antitrust and common-law tort claims. Under the interpretation advanced by Cliffs, the *dismissal* of the bankruptcy claims *strengthens* the argument for keeping the proceeding in the Bankruptcy Court. This Court and others have rejected such a reading of the statute. *See, e.g., Hatzel & Buehler, Inc. v. Orange & Rockland Util.*, 107 B.R. 34, 38 (D. Del. 1989) (refusing to interpret Section 157 to require bankruptcy issues for mandatory withdrawal because doing so would "effectively defeat the attempts of the Code to rationalize bankruptcy litigation"); *In re St. Mary Hosp.*, 115 B.R. 495, 497 (E.D. Pa. 1990) (a reading of the statute that requires consideration of *both* bankruptcy and non-bankruptcy law "seemingly defeats the whole purpose of section 157(d), the withdrawal of matters requiring the application of non-bankruptcy law from the relatively less

23

experienced bankruptcy court to the more experienced district court"); *see also In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 953 (7th Cir. 1996) (finding that it "would be somewhat anomalous to require withdrawal of a proceeding that contains, say, both title 11 and complex antitrust interpretation issues, but leaves to the bankruptcy court those cases or proceedings that require complex analysis of the antitrust statutes alone"); *In re Contemporary Lithographers, Inc.*, 127 B.R. 122, 127-28 (M.D.N.C. 1991) (finding "it would make no sense to prevent withdrawal from a bankruptcy court where there is a lack of bankruptcy questions").

Cliffs' cited authorities do not support its argument for maintaining the reference to the Bankruptcy Court. (*See* Civ. No. 24-1117-GBW at 3.)  In both cases, the Court found that mandatory withdrawal did not apply because the claims involved ***only state law issues*** rather than federal laws affecting interstate commerce, as required by 28 U.S.C § 157(d).  *See In re Big V Holding Corp.*, 2002 WL 1482392, at *3-6 (D. Del. July 11, 2002) (finding mandatory withdrawal did not apply because the action "involves only state law tort and contract claims"); *In re 5171 Campbells Land Co., Inc.*, 2022 WL 267357, at *2 (W.D. Pa. Jan. 28, 2022) (finding mandatory withdrawal did not apply because the proceeding "raises only state law claims").  Neither case denied mandatory withdrawal due to the absence of bankruptcy issues.

### 2.    Cause Warrants Permissive Withdrawal

Moreover, Mesabi has met its burden of demonstrating that cause exists at this time to warrant permissive withdrawal. *See In re Liberty State Benefits of Delaware Inc.*, 2015 WL 1137591 at *2 (D. Del. Mar. 12, 2015) ("As the moving party, [movant] has the burden to prove that cause exists to withdraw the reference." (citation omitted)).

Although the statute does not define "cause shown," the Third Circuit has set forth several factors that may be considered in determining whether cause exists to withdraw the reference: promoting uniformity in bankruptcy administration, reducing forum shopping and confusion,

fostering the economical use of the debtors' and creditors' resources, expediting the bankruptcy process, and the timing of the request for withdrawal. *See In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (discussing non-exhaustive list of factors). Other factors considered by courts analyzing whether withdrawal is appropriate are whether the claim is a core bankruptcy proceeding or whether it is non-core, and whether the parties have requested a jury trial. *In re NDEP Corp.*, 203 B.R. 905, 908 (D. Del. 1996) (citations omitted).

A proceeding is "core" if it invokes a substantive right provided by the Bankruptcy Code or if could only arise in the context of a bankruptcy case. *See Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). The Adversary Proceeding is a non-core proceeding. (MSJ Opinion at 1 ("The principle claims are 'non-core' matters, on which the parties are entitled to a trial by jury and Article III adjudication."); 13-14 (recognizing that none of the remaining claims at issue "arise under" the Bankruptcy Code). Cliffs has consistently indicated that the Adversary Proceeding is a non-core proceeding, and it has refused to consent to the entry of final order or judgment of the Bankruptcy Court with respect to the remaining claims in the Adversary Proceeding. (MSJ Opinion at 15; Adv. D.I. 34 at 7; Adv. D.I. 35 at 2, 57.) Mesabi agrees with Cliffs that the Adversary Proceeding is a non-core proceeding. Because Cliffs has demanded a jury trial and has not consented to trial in the Bankruptcy Court, the Court must withdraw the reference.

Finally, the Motion for Withdrawal of the Reference is timely. It is the general practice of this Court to withdraw the reference at "such time as the matter is ready for trial." *In re 24 Hour Fitness Worldwide, Inc.*, 2022 U.S. Dist. LEXIS 1943, at *10 (D. Del. Jan. 4, 2022). As Judge Goldblatt stated, the case "has now progressed as far as it can" in the Bankruptcy Court. (MSJ Opinion at 1.) As the Motion for Interlocutory Appeal will be denied, Cliffs is not prejudiced by the timing of the withdrawal. In sum, even if withdrawal of the reference were not mandatory, the Court finds that cause exists to withdraw the reference of the Adversary Proceeding at this time.

## IV.    CONCLUSION

Leave to appeal the interlocutory MSJ Order is not warranted because the proposed appeal presents no controlling issue of law, nor one that would advance the ultimate termination of the lawsuit. Accordingly, the Court will deny the Motion for Interlocutory Appeal. Because this proceeding presents complex issues of federal antitrust law that the Bankruptcy Court has determined are ready for trial, and both parties agree that the jury trial should take place in the District Court, the reference to the Bankruptcy Court must be withdrawn so that the proceeding can be handled by the District Court. Accordingly, the Court will grant the Motion for Withdrawal of the Reference. A separate Order will be entered.

_____

The Honorable Gregory B. Williams
United States District Judge

Date: February 14, 2025