IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC., <br><br> Debtors, | Chapter 11 <br> Bank. No. 16-11626-CTG <br> (Jointly Administered) |
| MESABI METALLICS COMPANY LLC (f/k/a ESSAR STEEL MINNESOTA LLC), <br><br> Plaintiff, <br> v. <br><br> CLEVELAND-CLIFFS, INC. (f/k/a CLIFFS NATURAL RESOURCES, INC.); CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC; GLACIER PARK IRON ORE PROPERTIES LLC; and DOES 1-10 <br><br> Defendants. | Adv. No. 17-51210-CTG <br><br> Civil Action No. 24-1117-GBW |

## MEMORANDUM ORDER

Pending before the Court are (1) Mesabi's motion requesting "leave, if necessary, to supplement the disclosures of its expert," Professor Davis ("Mesabi's Motion") (D.I. 15), which has been fully briefed (D.I. 18), and (2) Cliffs' motion requesting "the Court to confirm that the Bankruptcy Court's partial summary judgment ruling mooted Mesabi's attempted monopolization claims" ("Cliffs' Motion") (D.I. 16), which has also been fully briefed (D.I. 17).[1] For the following reasons, the Court grants-in-part and denies-in-part Mesabi's Motion and denies Cliffs' Motion.

---

[1] The Plaintiff is Mesabi Metallics Company LLC ("Mesabi"). The Defendants include Cleveland-Cliffs, Inc. and Cleveland-Cliffs Minnesota Land Development LLC (collectively, "Cliffs").

I.  **BACKGROUND**

On February 14, 2025, this Court entered a Memorandum Opinion (D.I. 9) and Order (D.I. 10) that *inter alia* granted Mesabi's Motion for Withdrawal of the Reference (D.I. 1). The Memorandum Order also instructed the parties to "submit a Joint Status Report and a joint proposed Scheduling Order . . . that sets forth any remaining pretrial issues, a list of the issues that will be tried, and the parties' proposal for the length and timing of the trial." D.I. 10 at 1. On March 17, 2025, the parties timely filed their Joint Status Report (D.I. 11) and Proposed Scheduling Order (D.I. 11-1) setting forth these issues and also five disputes between the parties. Two of those disputes gave rise to the two motions before the Court and are the focus of this Memorandum Order.

Below, the Court (in writing for the benefit of the parties) briefly sets forth the facts and procedural history necessary for discussion of these two disputes.

A.  **The First Dispute**

The origin of the first dispute is that Professor Davis employed in his damages models certain variables that are subject to change on the basis of future events. Accordingly, in the parties' Joint Status Report, Mesabi sought assurance from the Court that Mesabi could rely on Professor Davis' "existing disclosures without being subjected to arguments that the disclosures are deficient or unreliable because they have not been supplemented since February 19, 2024." D.I. 11 at 11. Mesabi also requested the Court to prohibit Cliffs from cross-examining Professor Davis "about facts arising after February 19, 2024." D.I. 11 at 11. Cliffs opposed Mesabi's requested relief on several grounds, including that Professor Davis' "hypothetical assumptions must be tested against real-world facts, not shielded from scrutiny because the contradictory facts may have occurred after an arbitrary date." D.I. 11 at 12.

On March 24, 2025, the Court entered an Oral Order denying, without prejudice, the request from Mesabi that the Court "preclude Defendants from contending that Mr. Davis' opinions are unreliable." D.I. 12. The Court explained that "[i]nsofar as Defendants are permitted and do file a motion contending that Mr. Davis' opinions are unreliable, Mesabi may file an opposition brief, and Defendants may file a reply brief in further support of their motion." D.I. 12. The same Oral Order also denied, without prejudice, "Mesabi's request to preclude Defendants from cross-examining Mr. Davis about facts arising after February 19, 2024." D.I. 12. The Court explained that "Mesabi may request this relief in a motion *in limine* in a manner consistent with this Court's local rules and the operative scheduling order in the case at that time." D.I. 12.

Recognizing the tension between the fact that Professor Davis has not supplemented his opinions with new facts arising after Professor Davis' opinions, and Defendant's (at least threatened) reliance on new facts arising after Professor Davis' opinions, the Court instructed that Mesabi could file a letter brief "requesting leave to prepare and serve an updated report from Mr. Davis." D.I. 12. On March 31, 2025, Mesabi filed its Motion and corresponding letter brief requesting such leave, but only to the extent that the Court denies Mesabi's renewed request that the Court preclude Cliffs from challenging Professor Davis' opinions. D.I. 15.

On April 7, 2025, Defendant filed a letter brief in opposition, contending that the Court should deny Mesabi's requests, but also requesting, in the event that the Court were to allow Professor Davis to supplement his opinions, that the Court "allow Cliffs time to evaluate whether to supplement its own expert disclosures and whether additional depositions or objections to Mesabi's experts are needed." D.I. 18 at 3.

**B.    The Second Dispute**

On January 23, 2018, Mesabi filed a Second Amended Complaint in the U.S. Bankruptcy Court for the District of Delaware alleging *inter alia* that Cliffs violated § 2 of the Sherman Act

3

by unlawfully monopolizing and attempting to monopolize the market for blast furnace pellets in the Great Lakes region. No. 17-51210-CTG, D.I. 18 at 44, 46.[2]

On November 10, 2023, Mesabi filed a motion for partial summary judgment regarding the first element of its monopolization claim, i.e., whether Cliffs had monopoly power in the relevant market. D.I. 11 at 5; No. 17-51210-CTG, D.I. 835, D.I. 838. On August 27, 2024, the Bankruptcy Court entered summary judgment in favor of Mesabi on this issue, concluding that "Cliffs possessed monopoly power" over "blast furnace pellets" in "the Great Lakes region." No. 17-51210-CTG, D.I. 1074 at 28, 36, 43.[3]

In the parties' Joint Status Report, Cliffs stated its intention "to appeal" this summary judgment but nonetheless asserted that the decision "effectively moots Mesabi's attempted monopolization claim" since there is no reason for the jury to consider whether there is a dangerous *probability* of Cliffs achieving monopoly power (the third element of attempted monopolization) when the Bankruptcy Court has already concluded that Cliffs *possessed* that monopoly power (for the first element of monopolization). D.I. 11 at 17-18. Given that Cliffs raised this issue with Mesabi shortly before the deadline for submission of the parties' Joint Status Report, Mesabi was

---

[2] Monopolization under § 2 of the Sherman Act requires the plaintiff to show "(1) possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437 (3d Cir. 1997) (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 596 n. 19 (1985)); *see also Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 749 (3d Cir. 1996) (same); *Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 752 F.2d 802, 808 (3d Cir. 1984) (same). An attempt of monopolization under § 2 of the Sherman Act requires a showing "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Philadelphia Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 339 (3d Cir. 2018) (internal citations omitted).

[3] August 27, 2024 is the date of the sealed Memorandum Opinion. No. 17-51210-CTG, D.I. 1070. Herein, the Court cites to the unsealed version, dated September 4, 2024. No. 17-51210-CTG, D.I. 1074.

unable to fully form a position on the matter at the time. D.I. 11 at 18. Mesabi stated, however, that it agreed with Cliffs insofar as Cliffs was conceding liability for attempted monopolization and that Mesabi otherwise sought clarification if Cliffs was not conceding liability. D.I. 11 at 18.

On March 24, 2025, this Court entered an Oral Order instructing the parties to set forth their positions on the impact of the Bankruptcy Court's summary judgment decision on Mesabi's monopolization claims. D.I. 13. On March 31, 2025, Cliffs filed its letter brief essentially reiterating its position from the parties' Joint Status Report, but in greater detail. D.I. 16. On April 4, 2025, Mesabi filed an opposition brief asking this Court to decline the relief sought in Cliffs' Motion. D.I. 17 at 3.

## II.   DISCUSSION

This Discussion contains the following Sections: (A) the Court grants-in-part and denies-in-part Mesabi's Motion; and (B) the Court denies Cliffs' Motion.

### A.   The Court Grants-in-Part and Denies-in-Part Mesabi's Motion

The Court does not reconsider its decision denying Mesabi's request to preclude Cliffs from challenging Professor Davis' opinions with respect to recent developments for three key reasons. *First*, the Court's Oral Order merely authorized Mesabi to file a letter brief "requesting leave to prepare and serve an updated report from Mr. Davis." D.I. 12. The Court's Oral Order did not authorize Mesabi to repeat other arguments that the Court had already denied. D.I. 12. *Second*, Mesabi could have filed a motion for reconsideration but failed to do so.

*Third*, it remains that "[i]nsofar as Defendants are permitted and do file a motion contending that Mr. Davis' opinions are unreliable, Mesabi may file an opposition brief, and Defendants may file a reply brief in further support of their motion, in a manner consistent with this Courts local rules and the operative scheduling order in the case at that time." D.I. 12. In

resolving such a dispute or a similar *motion in limine* (i.e., the proper vehicles for such a dispute),[4] the Court forecasts potential invocation, as necessary and appropriate, of Rules 26 and 37 of the Federal Rules of Civil Procedure, which operate in tandem to prohibit the introduction of certain information and evidence in a motion or at a hearing or trial. For example:

- Rule 26(a)(1)(A)(ii)-(iii) provides: "Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: . . . (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment; (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."
- Rule 26(a)(2)(A) provides: "In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."
- Rule 26(a)(2)(B) provides: "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—

---

[4] The Court could construe Mesabi's request to preclude Defendant's reliance on recent developments as a motion *in limine*. However, this Court generally enters scheduling orders instructing the parties to file any motions *in limine* alongside the parties' proposed pretrial order. Here, the Court has not yet entered a scheduling order and, thus, the resolution of any motions *in limine* would be premature under this Court's case management procedures.

- if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."

- Rule 26(e)(1) provides: "A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court."

- Rule 26(e)(2) provides: "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."

- Rule 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

In other words, Rule 37(c)(1) prohibits the introduction, by expert or otherwise, of information and evidence (including information and evidence related to future damages), by motion or at a hearing or trial, that that should have been, but was not, disclosed under Rule 26(a) and (e). *See Nitta v. United States*, No. 17-cv-01137-GMN-CWH, 2019 U.S. Dist. LEXIS 109341, *7-10 (D. Nev. June 28, 2019) (striking computation of "future earnings" under Rule 37(c)(1) in light of a corresponding Rule 26(a) violation). In the event that Cliffs lodges a *Daubert* challenge

7

to Professor Davis' damages models for purportedly failing to account for recent developments, such challenge, and any corresponding reliance on recent developments, will be subject to these procedural rules. Since both parties are subject to these rules, the information and evidence supporting the parties' competing theories on future damages in this action will be in at least approximate, if not complete, equipoise.

Moreover, after considering the arguments from both sides, including the fact that Cliffs has threatened to use events arising after Professor Davis' opinions to contest the reliability of Professor Davis' opinions, the Court grants Mesabi's request for leave to supplement Professor Davis' opinions. *See, e.g., Lombard Flats LLC v. Fay Servicing LLC*, No. 22-cv-05686-LB, 2024 U.S. Dist. LEXIS 14582, *15 (N.D. Cal. Jan. 21, 2024) ("As to damages studies, the cut-off for *past damages* is the date of the expert report (or an earlier date selected or used by the expert). Experts may project future damages after this cut-off date if they can meet substantive standards for *future damages*. With timely leave of court or by written stipulation, the experts may update their reports (or provide supplemental reports) to a date closer to the time of trial."); *SC Engineered Sols., LLC v. Island Indus., Inc.*, No. 220-cv-02284-JPM, 2021 WL 2941989, at *2 (W.D. Tenn. July 13, 2021) (explaining that "supplemental expert reports are [sometimes] permitted where the expert is correcting a damages calculation based on information that was not available when the expert prepared the initial report, [and] as long as the expert [is] not rely[ing] on an entirely new legal theory in correcting [their] supplementation").[5]

---

[5] Given that the Court is denying Mesabi's renewed request to preclude Cliffs from challenging Professor Davis' opinions (at least at this time), the Court elects to address only two of the remaining arguments in Cliffs' opposing letter brief. First, Cliffs contends that Mesabi concedes that Professor Davis' opinions are not accurate. However, thus is the nature of damages models with variables that are affected by future events. Second, Cliffs also contends that Mesabi fails to identify "what Davis would update, how he would do so, or by when." D.I. 18 at 1. However, the

The Court, however, does not compel Professor Davis to supplement his opinions. After consideration of the foregoing, any other applicable rules, and its own litigation strategy, Mesabi may proceed as it deems appropriate and as consistent with the (forthcoming) instructions in this Memorandum Order. Should Professor Davis supplement his opinions, the Court will permit Cliffs to serve a rebuttal opinion and engage in supplemental discovery (as needed) to ensure equitable treatment between the parties. *See TQ Delta LLC v. Comcast Cable Commc'ns LLC*, No. 15-cv-611-GBW, 2023 WL 7920930, at *3 (D. Del. Nov. 16, 2023) (granting plaintiff's motion to supplement its damages expert reports and explaining that defendants would have the "opportunity to serve a rebuttal report and conduct [] supplemental discovery"). Notably, the Court, through this Memorandum Order, does not authorize Cliffs to serve a new report, or complete additional discovery, unless Mesabi elects to supplement or the Court otherwise grants Cliffs leave to do so.

For the foregoing reasons, the Court grants-in-part and denies-in-part Mesabi's Motion.

## B. The Court Denies Cliffs' Motion

As described above, Cliffs contends that there is no reason for the jury to consider whether there is a dangerous probability of Cliffs achieving monopoly power when the Bankruptcy Court has already concluded that Cliffs possessed such monopoly power. D.I. 16 at 1-2. Cliffs is wrong.

"To say that one who has monopolized has also attempted to monopolize is redundant and adds nothing to the scope of available remedies." Herbert Hovenkamp & Phillip Areeda, Antitrust Law: An Analysis of Antitrust Principles and Their Application 806 (2024); *Royal Mile Co. v.*

---

record shows that an update from Professor Davis would account for recent developments impacting the variables in Professor Davis' damages models. That Cliffs would raise such an argument is, moreover, somewhat striking since Cliffs' threat of relying upon recent developments to undermine Professor Davis' opinions appears to give rise to Mesabi's concerns.

9

*UPMC*, No. 10-1609, 2013 U.S. Dist. LEXIS 138678, at *102 n.28 (W.D. Pa. Sep. 27, 2013) (same); *LePage's, Inc. v. 3M*, 324 F.3d 141, 169 (3d Cir. 2003) (declining to "consider the correctness of the District Court's ruling on the attempted monopolization claim because" it upheld the District Court's "decision on the monopolization claim"). Stated another way, the attempt to monopolize "is merged into the completed offense." Antitrust Law: An Analysis of Antitrust Principles and Their Application 806; *Royal Mile*, 2013 U.S. Dist. LEXIS 138678, at *102 n.28 (same). However, in such cases "the plaintiff may plead both offenses and allow the court to base its disposition on either or neither offense as the evidence emerges." Antitrust Law: An Analysis of Antitrust Principles and Their Application 806; *Royal Mile*, 2013 U.S. Dist. LEXIS 138678, at *102 n.28 (same).

"At least two courts of appeals to consider the issue have held that a defendant that *actually* monopolizes a market cannot be held liable for *attempting* to monopolize the market." *Royal Mile*, 2013 U.S. Dist. LEXIS 138678, at *102-03 n.28 (citing *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1021 (6th Cir. 1999) ("Of course, the evidence supporting Re/Max's claim that the defendants have monopoly power cuts against its theories of attempted monopolization and conspiracy to monopolize."); *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 373 (7th Cir. 1986) ("Olympia's complaint also charges attempted monopolization, but in a case such as this where the plaintiff presents (as we shall see) adequate evidence of monopoly power, he can get no mileage out of charging attempted as well as completed monopolization.")).

Considering these cases, the Western District of Pennsylvania in *Royal Mile* elected to not address the dangerous probability of the defendants achieving monopoly power where the

defendants actually possessed monopoly power. *Royal Mile*, 2013 U.S. Dist. LEXIS 138678, at *102.

Here, it appears that Cliffs intends "to appeal" the Bankruptcy Court's conclusion that Cliffs possessed monopoly power. D.I. 11 at 17. If Cliffs prevails on appeal, the issue of whether there was a "dangerous probability" of Cliffs achieving monopoly power would likely be ripe for resolution. Rather than bifurcating these issues and potentially facilitating piecemeal litigation,[6] the Court will allow Mesabi to present its case in chief to the jury on both monopolization and attempted monopolization. *See* Antitrust Law: An Analysis of Antitrust Principles and Their Application 806 (explaining that "the plaintiff may plead both offenses and allow the court to base its disposition on either or neither offense as the evidence emerges"). Insofar as the parties wish to stipulate to the dangerous probability of Cliffs achieving monopoly power, they are welcome to do so. *See Azurity Pharms., Inc. v. Alkem Lab'ys Ltd.*, No. 2023-1977, ___ F.4th ___, 2025 U.S. App. LEXIS 8173, at *2 (Fed. Cir. Apr. 8, 2025) ("A stipulation of fact that is fairly entered into is controlling on the parties and the court is generally bound to enforce it." (quoting *Ring & Pinion Serv. Inc. v. ARB Corp.*, 743 F.3d 831, 836 (Fed. Cir. 2014))).

For the foregoing reasons, the Court denies Cliffs' Motion.

### III.   CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part Mesabi's Motion (D.I. 15) and denies Cliffs' Motion (D.I. 16).

---

[6] "Under Rule 42(b), a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987). "[W]hile there may be some efficiency in bifurcating . . . the [C]ourt is inclined to find that it is generally much more efficient to work towards one trial and one appeal." *Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 35 (D. Del. 1995).

\* \* \*

WHEREFORE, at Wilmington this 16th day of April 2025, **IT IS HEREBY ORDERED** that:

1. Mesabi's Motion (D.I. 15) is **GRANTED-IN-PART** and **DENIED-IN-PART**;
2. Cliffs' Motion (D.I. 16) is **DENIED**;
3. Mesabi shall notice the Court on whether Mesabi intends to supplement Professor Davis' opinions, in a letter not to exceed one (1) page, by no later than seven (7) days after the entry of this Memorandum Order.
4. If Mesabi notices its intent to supplement Professor Davis' opinions, the parties shall, within seven (7) days after Mesabi's notice, meet and confer and file either (1) a stipulation regarding the deadlines for serving supplemental opinions or (2) a joint letter describing why the parties were unable to reach a stipulation and setting forth their positions on the deadlines.
5. If Mesabi notices its intent *not* to supplement Professor Davis' opinions, Cliffs shall, by no later than seven (7) days after Mesabi's notice, either (1) file a letter brief, not to exceed three (3) pages, seeking leave to supplement the opinions of its expert(s), or (2) file a letter, not to exceed one (1) page, notifying the Court that Cliffs does not intend to seek such leave.
6. If Cliffs files a letter brief seeking leave to supplement the opinions of its expert(s), Mesabi shall file any answering letter brief in opposition, not to exceed three (3) pages, by no later than seven (7) days after Mesabi's letter brief.

7. Cliffs shall not file any reply letter brief in further support of its request for leave to supplement absent leave of this Court.[7]

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[7] There are additional pending disputes between the parties in the parties' Joint Status Report (D.I. 11) and Proposed Scheduling Order (D.I. 11-1). The Court will resolve these disputes after the parties comply with this Memorandum Order.